IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL No. 2:13-cr-00070-MSD-TEM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KASSIAN MARITIME | ) | |
| NAVIGATION AGENCY, LTD., *et al.* | ) | |
| | ) | |
| Defendants, | ) | |

**MOTION TO TAKE JUDICIAL NOTICE OF THE PAYMENT OF
MONETARY REWARDS TO WHISTLEBLOWERS UNDER
THE ACT TO PREVENT POLLUTION FROM SHIPS**

**COMES NOW**, KASSIAN MARITIME NAVIGATION AGENCY, LTD. ("Kassian") and ANGELEX LTD. ("Angelex") (collectively "defendants"), by and through undersigned counsel, and respectfully moves this Court to take judicial notice that the Act to Prevent Pollution from Ships ("APPS") 33 U.S.C. § 1908(a) provides for, and the government routinely moves the United States District Courts to issue, a monetary reward to whistleblowers for providing information leading to criminal conviction under APPS. As grounds in support of the instant motion, defendants respectfully submit the following:

**BACKGROUND**

On April 15, 2013, the United States Coast Guard boarded the M/V ANTONIS G. PAPPADAKIS in the Port of Norfolk and issued a Port State Control Report, which initially detained the vessel at Norfolk pending resolution of purported deficiencies related to, *inter alia*, alleged inaccuracies with the Oil Record Book. The matter was referred by the Coast Guard and

accepted by the U.S. Department of Justice for a criminal investigation on or about April 19, 2013. At the request of the Coast Guard and pursuant to 33 U.S.C. 1908(e), the Customs and Border Protection Agency ("CBP") has revoked the vessel's departure clearance as of April 19, 2013. The vessel remains idle at the Portsmouth Marine Terminal Dock. The detention of the vessel and her crew in Norfolk was the direct and exclusive result of a purported "tip" or "whistleblower" report by Second Engineer Nathaniel Enicola. *See MST2 Erickson Interview Report (bates numbered MVAP_R000077-78), a copy of which is attached hereto as Exhibit "A."*

On May 22, 2013, an eight (8) count indictment was sought and obtained by the prosecutors against defendants Kassian and Angelex (as well as defendant Lambros Katsipis). *See* D.E. #12. The indictment charges each of the defendants with: one (1) count of conspiracy under 18 U.S.C. § 371; three (3) counts of falsification of records under 18 U.S.C. §§ 1519 and 2; three (3) counts of knowing failure to maintain an accurate oil record book under 33 U.S.C. § 1908(a) and 18 U.S.C. § 2; and one (1) count of obstruction of justice under 18 U.S.C. §§ 1505 and 2. *Id.* Defendants Angelex and Kassian are only charged based upon the alleged acts committed by their purported "agent(s) and/or employee(s)," (namely, the vessel's former Chief Engineer Katsipis); all of which arise out of the same underlying alleged conduct reported by the purported whistleblower. *Id.* The indictment set forth the government's alleged legal authority in support of the vicariously charged criminal conduct against Kassian and Angelex as follows:

D. LEGAL FRAMEWORK

1. The United States is part of an international regime that regulates discharges of oil from vessels at sea known as the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol"). The MARPOL Protocol was enacted into United States law by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1901, *et seq.* APPS makes it a crime for any person to

> knowingly violate MARPOL, APPS, or regulations promulgated under APPS, The regulations promulgated under APPS apply to all commercial vessels over 400 gross tons operating in the navigable waters of the United States or while at a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. 33 C.F.R. § 151.09(a)(5).

*See* Indictment, D.E. #12, pp. 3; *see also* pp. 5-6, ¶¶ 4-5.

APPS is the United States implementation of the MARPOL protocol, which sets forth international standards designed and intended to protect the marine environment. *See* 33 U.S.C. § 1901 *et seq.* A person found to have knowingly violated APPS commits a class D felony and can be subject to punishment, including imprisonment and significant fines. 33 U.S.C. § 1908(a). Defendants are charged with three (3) counts of violating APPS under 33 U.S.C. § 1908(a). *See* D.E. #12, Counts 5-7. The statute, specifically, provides:

> (a) Criminal penalties; payment for information leading to conviction
>
> A person who knowingly violates the MARPOL Protocol, Annex IV to the Antarctic Protocol, this chapter, or the regulations issued thereunder commits a class D felony. ***In the discretion of the Court, an amount equal to not more than 1/2 of such fine may be paid to the person giving information leading to conviction***.

33 U.S.C. § 1908(a) (emphasis added).

The statute unequivocally provides the basis for issuance of a whistleblower reward for information that leads to a conviction for a violation of the MARPOL Protocol. The whistleblower witnesses,[1] who are expected to testify for the prosecution, are acutely aware of the availability and likelihood of receiving such a whistleblower reward. In fact, former Second Engineer Nathaniel Enicola has specifically retained counsel for the express purpose of obtaining

---

[1] Second Engineer Nathaniel Enicola was the individual who provided the "whistleblower tip" to the Coast Guard agents. *See* Exhibit A. The other government material witness whistleblowers include: Third Engineer Silverio Gedalanga, Third Engineer Romulo Silfavan, Electrician Rommel Arganda, and Engine Cadet Jonrie Gabalonzo.

a "whistleblower reward." *See copy of correspondence from counsel for Nathaniel Enicola provided to all counsel of record, attached hereto as Exhibit "B."* ("Second Engineer Enicola has asked us to assist him **with representation focusing on the APPS award** . . .) (emphasis added).

## ARGUMENT

**I.     THE DISTRICT COURT HAS UNRESTRICTED AUTHORITY TO TAKE JUDICIAL NOTICE OF LEGISLATIVE FACTS.**

Judicial notice allows courts to dispense with the introduction of evidence for facts that are outside the area of "reasonable controversy." *See* Fed. R. Evid. 201(a) advisory comm. nn. Legislative facts, such as the language of statutes, are not covered by Federal Rule of Evidence 201, but are well suited for judicial notice, since their existence is outside the area of reasonable controversy.[2] It is accepted practice to take judicial notice of legislative facts, and legislative facts include the interpretation of statutes. *Id.* ("legislative facts are . . . the enactment of a legislative body."); *see also United States v. Gavegnano*, 305 Fed. Appx. 954, 956 (4th Cir. Va. 2009) (unpublished).[3]

Since legislative facts are not governed by Rule 201, the advisory committee's notes suggest that a judge's ability to take judicial notice of legislative facts is "unrestricted." In *United States v. Gavegnano*, the Fourth Circuit Court of Appeals affirmed the district court's decision to take judicial notice of the legislative fact that defendant was charged with crimes

---

[2] The Advisory Committee's Notes for Rule 201(a) go on to explain the fundamental difference between adjudicative and legislative facts: "Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to . . . the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Fed. R. Evid. 201(a) advisory comm. nn.

[3] In *Gavegnano*, the United States argued in favor of judicial notice of legislative facts and the contents of the criminal statutes applicable in that case.

4

punishable by over one (1) year in prison. In explaining the availability of judicial notice of legislative facts, the Fourth Circuit held:

> Here, the fact of which the district court took judicial notice, *i.e.*, the penalty for the crimes with which Gavegnano was charged, ***is fixed, does not change from case to case, and applies to all cases in which those crimes were charged***. Hence, it is a legislative, not an adjudicative fact. *See, e.g., United States v. Williams*, 442 F.3d 1259, 1261 (10th Cir. 2006) (citations omitted) ("statutes are considered legislative facts" of which the authority of courts to take judicial notice is "unquestionable.").

*Gavegnano*, 305 Fed. Appx. at 956. (emphasis added).

At the District Court level, Judge Moon denied Gavegnano's post-trial motion to set aside the verdict, holding that judicial notice of a statute was proper and within the purview of the Court. *United States v. Gavegnano*, 2007 U.S. Dist. LEXIS 18269 (W.D. Va. 2007). The Court compared judicial notice for statutes to that of judicial notice for geography, saying that while geography has long been recognized as being well suited to judicial notice, "the content of statute books is even more suited to such notice; ***while most judges can probably read a map, all of them must be able to read the U.S. Code.***" *Id.* (citing *United States v. Piggie*, 622 F.2d 486, 487-88 (10th Cir. 1980)) (emphasis added).

In this case, the language of 33 U.S.C. § 1908(a), which provides for a whistleblower reward of up to half of the fine for a person giving information leading to conviction, is fixed and does not change from case to case.[4] As such, it is ripe for judicial notice as an unquestioned

---

[4] The fact that the whistleblower reward is discretionary does not change the analysis that the Court is permitted to take judicial notice of same. *See Gavegnano*, 305 Fed. Appx. at 957 ("Likewise without merit is Gavegnano's contention that judicial notice was not proper because one of the charges carried a penalty of "zero to five" years. As the crimes all were *punishable* by imprisonment for a term exceeding one year, the actual prison sentence imposed is not relevant to the determination of whether judicial notice in this case was proper.") (emphasis in original). Notably, moving defendants are unaware of any district court ever denying an application for payment of a whistleblower reward in a successful APPS prosecution.

legislative fact. *Gavegnano*, 305 Fed. Appx. at 956; *see also United States v. Williams*, 442 F.3d 1259 (10th Cir. 2006) (citations omitted); *United States v. Hernandez-Fundora*, 58 F.3d 802, 813 (2d Cir. 1995) (clarifying that courts may take judicial notice of either legislative or adjudicative facts, but only adjudicative facts are subject to the "structures of Rule 201."); *United States v. Gould*, 536 F.2d 216 (8th Cir. 1976) ("A court generally relies upon legislative facts when it purports to develop a particular law or policy. . . Legislative facts are established truths, facts or pronouncements that do not change from case to case but apply universally. . ."). Accordingly, it is respectfully submitted that the Court should take judicial notice of the fact that 33 U.S.C. § 1908(a) provides a whistleblower reward for persons who provide information leading to conviction.

## II. THE GOVERNMENT ROUTINELY REQUESTS THE UNITED STATES DISTRICT COURTS TO ISSUE MONETARY AWARDS TO WHISTLEBLOWERS AND NO SUCH REQUESTS HAVE EVER BEEN DENIED.[5]

In cases involving violations of APPS, the government routinely and consistently moves the United States District Courts to, in their discretion, reward whistleblowers thousands, if not millions, of dollars in recognition of their testimony which ultimately led to a defendant's guilty plea or conviction. The United States regularly alleges that "the APPS award provision serves a valuable law enforcement purpose by encouraging those most likely to know of the illegal conduct…absent crewmembers with firsthand knowledge of the illegal conduct coming forward, APPS violations are extremely difficult to uncover" *See United States of America v. Styga Compania Naviera, S.A.*, 09-CR-00572 (S.D.T.X. 2009) at D.E. #32.

---

[5] Moving defendants are unaware of any successful MARPOL prosecution where the government did not request a reward be paid to at least one (1) former crewmember whistleblower.

In *Styga*, United States District Judge Atlas granted the government's motion and awarded a total sum of $312,500 to be split among the five (5) whistleblower witnesses in recognition of the information provided which led to a plea agreement and criminal fine.[6] Upon similar grounds, the government has repeatedly moved courts in APPS cases to issue monetary rewards to whistleblower witnesses throughout various U.S. jurisdictions. *See e.g. United States v. Giuseppe Bottiglieri Shipping,* 12-CR-0057 (S.D. Ala. 2012); *United States v. Aquarosa Shipping S.A.,* 11-CR-0671 (D. Md. 2011); *United States v. Efploia Shipping Co., S.A.,* 11-CR-0652 (D. Md. 2011); *United States v. DST Shipping, Inc.,* 04-CR-1728 (C.D. Cal. 2004).

There have been numerous other cases in districts throughout the United States in which "whistleblowers" have been awarded significant sums under 33 U.S.C. § 1908 (a) at the request of the government. *See* for example, the following[7]:

*United States v. Nimmrich & Prahm Reedrei, et al.*, 12-CR-0549 (S.D. Tex. 2012): award of $67,000 each to three (3) vessel crewmember whistleblowers.

*United States v. Target Ship Management Pte Ltd., et al.*, 11-CR-0368 (S.D. Ala. 2012): award of $250,000 awarded to be split between seven (7) crewmembers.

*United States v. Ilios Shipping Company*, S.A. 11-CR-286 (E.D. La. 2011): award of $350,000 awarded to one (1) crewmember whistleblower.

*United States v. Aksay Denizcilik Ve Ticaret A.S.*, 10-CR-116-T-26TGW (M.D. Fla. 2010): award of $125,000 each to the vessel's two (2) motorman.

*United States v. Hiong Guan Navegacion Japan Co., Ltd.,* 08-CR-494 (M.D. Fla. 2009): award of $253,125 to the vessel's Fourth Engineer and $84,375 to the vessel's Third Engineer.

---

[6] As discussed in greater detail below, following the plea agreement between Styga and the government, the government proceeded to trial before District Judge Hoyt with its case against the Chief Engineer of the same vessel. *See United States v. Mylonakis*, 4:09-cr-00492 (S.D. Tex. April 28, 2010), discussed *infra.* In *Mylonakis*, the Court took judicial notice of the government's ability to request (and the Court's propensity to grant) rewards to whistleblowers for providing information and other assistance leading to an APPS conviction.

[7] The aforementioned list is not intended to be an exhaustive summary of all of the rewards sought and obtained by the government, but rather a demonstrative sample.

*United States v. Holy Holy House Shipping AB,* 08-CR-782 (D. N.J. 2009): award of $375,000 awarded to two (2) vessel crewmembers

*United States v. General Maritime Management (Portugal), L.D.S.,* 08-CR-00393-001 (S.D. Tex. 2009): award of $250,000 divided proportionately between five (5) crewmembers.

*United States v. Ionia Management*, 07-CR-0134 (D. Conn. 2007): awards of $500,000, $350,000, and $350,000 were provided to three (3) crewmember whistleblowers.

*United States v. Overseas Shipholding Group, Inc.*, 06-CR-10423 (D. Mass. 2006): Twelve (12) crewmembers each received $437,500 (for a total in whistleblower rewards of $5.25 million dollars)

*United States v. Sun Ace Shipping Company et al.,* 06-CR-00599 (D. N.J. 2006): award of $200,000 split evenly among three engine room crewmembers.

*United States v. MK Shipmanagement Co., Ltd.,* 06-CR-00307 (D.N.J. 2006): award of one half of the $200,000 fine to two crewmembers.

*United States v. Wallenius Ship Management PTE. Ltd.,* 06-cr-00213 (D.N.J. 2006): award of 2.5 million fine to four (4) crewmembers.

*United States v. OMI Corporation,* 04-cr-00060 (D.N.J. 2004): award of $2 million to one (1) crewmember.

The government's history of routinely seeking and obtaining rewards for former crewmembers that have become whistleblower witnesses further supports granting the instant motion and taking judicial notice of the statutory scheme and standard prosecutorial practice in these types of cases.[8] Parenthetically, this Honorable Court is aware that whistleblowers in at least one (1) similar matter have used power-point presentations from the Department of Justice

---

[8] In fact, the government's own press releases (accessed at http://www.justice.gov/opa/pr) routinely celebrate the whistleblower rewards sought and obtained in APPS cases, further support for this Court taking judicial notice of the practice. "The Court may take judicial notice of factual information located in postings on government websites." *Williams v. Cole*, 2012 U.S. Dist. LEXIS 15980 (D.S.C. Jan. 6, 2012) (citing *Williams v. Long*, 585 F. Supp. 2d 679, 687-88 (D. Md. 2008) (where the Court collected cases and found that district courts have held postings on government websites to be inherently authentic or self-authenticating under Fed. R. Evid. 902)).

– Environmental Crimes Section, as a template to present their "whistleblower" claims. *See e.g*. *United States v. Diana Shipping Services S.A.*, 2:13-cr-40 (E.D. Va. 2013).

### III. JUDICIAL NOTICE OF THE WHISTLEBLOWER AWARD PROVISION OF 33 U.S.C. § 1908(A) IS APPROPRIATE IN THIS CASE.

Similar MARPOL trials are instructive to this Court's consideration of the motion to take judicial notice, as acquittals have been obtained in similar cases where evidence of whistleblower rewards was allowed and considered by juries. *United States v. Maniatis*, 2:07-cr-00024-DLJ (E.D. Cal. 2007)*,* concerned MARPOL-related violations alleged to have occurred on board the M/T CAPTAIN X KYRIAKOU. The indictment charged the vessel's Chief Engineer, Second Engineer, and Operator with, *inter alia*, alleged violations of 33 U.S.C. § 1908(a), 18 U.S.C. § 1505, and 18 U.S.C. § 1519 (*i.e.* – the same statutes that defendants are charged with). The case against the Chief Engineer and the Operator proceeded to a jury trial, in which defendants were <u>acquitted</u> on all seven (7) felony counts. *Id.* In reaching its verdict, the jury disregarded the testimony of six (6) whistleblowers after defense counsel was able to impeach the credibility of the witnesses based upon their strong motivation to fabricate testimony in order to, *inter alia*, obtain a substantial reward from the government. *A copy of the Verdict Form for defendant Athenian Sea Carriers in the Maniatis matter is attached as Exhibit "C."*

Thereafter, a bench trial was held in the case against the Second Engineer. *See United States v. Georgakoudis*, 2:07-cr-00024-DLJ-2 (E.D. Cal. 2007). District Judge Jensen's ruling at the conclusion of trial (in which he also found the First Engineer <u>not</u> guilty on all counts) is significant:

> And I know there was the argument made that the so-called motivation to get a reward is not as significant as it may be, but there is a motivation. It is there . . . ***So I think it's important in terms of motivation when you're talking about if he does turn in the ship, will he get some kind of reward***.

9

*See* Transcript Excerpt, p. 18, lines 15-25 (*a copy of which is attached hereto as Exhibit "D."*) (emphasis added).

Similarly, in *United States v. Mylonakis*, 4:09-cr-00492 (S.D. Tex. April 28, 2010), a Chief Engineer was charged with five (5) felony counts surrounding allegations that he had ordered his crew to use a "magic pipe" to bypass pollution control equipment and discharge sludge and other oily waste directly into the sea. The case against the defendant relied upon the testimony of eight (8) crewmembers, who testified for the government that Chief Engineer Mylonakis had (allegedly) orchestrated the "magic pipe" bypass during his tenure on the vessel. During the trial, defendant Mylonakis moved District Judge Hoyt to take judicial notice of the government's ability to request (and District Courts' propensity to grant) monetary rewards to be paid to whistleblowers providing information and other assistance to the government. The Court granted the requests.

During cross-examination of government witnesses who admitted to being aware of the potential for reward, (and brief objection from the government), Judge Hoyt confirmed for the Jury, that "[t]he government does pay bonuses and things. So let's don't play around with that. . . . [T]he jury should understand that this is not unusual. The government does these kinds of things; and so, let's not make that the issue." *United States v. Mylonakis,* Criminal No. H-09-492, Transcript of Jury Trial before the Honorable Kenneth M. Hoyt, Volume 3 (S.D. Tex. April 21, 2010). at p. 3-182, lines 1-6 (*a copy of which is attached hereto as Exhibit "E"*). Judge Hoyt continued: "And let me just make sure the jury understands my remarks and instructions. Not just the federal government, the state government and a number of governments engage in paying bonuses to persons who report illegal activities. There is nothing improper about that,

nothing illegal or improper. And this questioning, this line of questioning is appropriate." *Id.* at p. 3-182, lines 16-22. Judge Hoyt subsequently took judicial notice of the fact that rewards are available and routinely granted to "whistleblowers" providing information to the government that leads to a conviction. The jury ultimately acquitted defendant Mylonakis of all five (5) charges against him, finding that the crewmember witnesses were not credible and had misled the government about the Chief Engineer's involvement in the alleged activities.[9]

The fact that the government routinely requests that District Courts award substantial whistleblower payments to crewmembers who provide information leading to an APPS conviction, and that Courts <u>always</u> grant such requests, cannot be subject to reasonable dispute. Accordingly, defendants respectfully submit that the motion be granted in its entirety.

**IV.  IT IS JUST AND EQUITABLE FOR THE COURT TO TAKE JUDICIAL NOTICE**

The Supreme Court has recognized, "equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief." *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962); *see also Swift & Co. v. Compania Caribe*, 339 U.S. 684, 691-691-692 (1950); *Lewis v. S.S. Baune*, 534 F.2d 1115, 1120-21 (5th Cir. 1976). In this case, the trier of fact is going to have to carefully consider conflicting motives and testimony with respect to the alleged crimes. It is respectfully submitted that taking judicial notice of the indisputable availability and regular payment of whistleblower rewards in these types of "APPS" cases, will put all the salient facts squarely on the table and reduce the risk of confusion for the jury.

---

[9] As discussed above, in *United States v. Styga Compania Naviera, S.A.*, 09-CR-00572 (S.D.T.X. 2009), Judge Atlas subsequently ordered that the sum of $312,500 be split among five (5) whistleblower witnesses who provided information leading to the plea agreement and criminal fine to be paid by Styga.

## CONCLUSION

For the foregoing reasons, Kassian and Angelex, respectfully pray that the Court grant the instant motion by taking judicial notice of:

a. The fact that 33 U.S.C. § 1908(a) provides for, and the government, as a matter of practice, routinely moves the United States District Courts to issue monetary payments, comprised of up to one half (1/2) of any criminal fine imposed against a defendant, to whistleblowers for providing information leading to criminal conviction(s) under the Act to Prevent Pollution from Ships;

b. The fact that the United States District Courts regularly grant the U.S. government's motions to issue monetary payments in favor of whistleblowers under the Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a);

and respectfully requests that the Court grant such other and further relief as it deems just, equitable and proper.

Dated: Norfolk, Virginia  
       August 1, 2013

Respectfully submitted,

CHALOS & CO, P.C.

By: /s/ George M. Chalos  
Mr. George M. Chalos (GC-8693)  
*Admitted Pro Hac Vice*  
55 Hamilton Avenue  
Oyster Bay, NY 11771  
Telephone: (516) 714 4300  
Facsimile: (516) 750-9051  
Email: gmc@chaloslaw.com

-and-

DAVEY & BROGAN, P. C.  
Mr. Patrick M. Brogan (VSB No. 25568)  
Attorneys for Defendant Angelex Ltd.  
101 Granby Street, Suite 300

Norfolk, Virginia 23510
Telephone: 757.622.0100
Facsimile: 757.622.4924
Email: pbrogan@daveybroganpc.com

*Attorneys for Defendant Angelex Ltd.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 1, 2013, I arranged for a copy of the foregoing document to be served via the Court's CM/ECF System to:

*Attorneys for United States of America*

Kenneth E. Nelson, Esq.
Environmental Crimes Section
Environment and Natural Resources Division
Department of Justice
601 D St. NW, Suite 2814
Washington, DC 20004
Telephone: (202) 305-0435
Email: Kenneth.Nelson3@usdoj.gov

Joseph L. Kosky, Esq.
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
8000 World Trade Center
101 West Main Street
Norfolk, Virginia 23510
Telephone: (757) 441-6331
Email: Joseph.Kosky@usdoj.gov

*Attorneys for Lambros Katsipis*

Trey R. Kelleter, VSB No. 41606
VANDEVENTER BLACK LLP
101 West Main Street, Ste. 500
Norfolk, Virginia 23510
Telephone: (757) 446-8600
Facsimile: (757) 446-8670
Email: tkelleter@vanblk.com

                                                            CHALOS & CO, P.C.

By:    /s/ George M. Chalos
          Mr. George M. Chalos (GC-8693)
          *Admitted Pro Hac Vice*
          55 Hamilton Avenue
          Oyster Bay, NY 11771
          Telephone:    (516) 714 4300
          Facsimile:    (516) 750-9051
          Email: gmc@chaloslaw.com