# Exhibit A

| DEPARTMENT OF HOMELAND SECURITY U.S. COAST GUARD CG-4608-1 (Rev. 1-11) | COAST GUARD INVESTIGATIVE SERVICE MEMORANDUM OF ACTIVITY (MOA) | CLASSIFICATION STAMP UNCLAS / FOUO / LES |
|---|---|---|
| TYPE OF ACTIVITY Witness Interview- MST2 ERICKSON, Kellyn | | CASE CONTROL NUMBER 0152-13 GCH 1542 2L[GK] |
| SUBJECT M/V ANTONIS G. PAPPADAKIS/IMO 9087271/MALTA FLAGGED VESSEL | | |

1. On 01 May 2013, S/A M. MILBOURNE and S/A J. BUFFORD, CGIS Chesapeake Region, interviewed MST2 Kellyn ERICKSON, Sector Hamptons Roads- Prevention at the Norfolk Federal Building, Norfolk, VA. Prior to any questioning, MST2 ERICKSON was informed as to the identity of the agents and the purpose of the interview. MST2 ERICKSON agreed to be interviewed and provided the following information:

2. MST2 ERICKSON has been a qualified Port State Control Officer for approximately three and a half years. He is also qualified in Foreign Freight and a boarding team member.

3. On 15 April 2013, MST2 ERICKSON went onboard the M/V Antonis G. Pappadakis along with MST1 Jeffrey PENNINGTON, Sector Hampton Roads, Prevention and LTJG Alex LEKANDER, Sector Hampton Roads, Prevention, to conduct a Port State Control boarding. MST2 ERICKSON and LTJG LEKANDER went down to the engine room while MST1 PENNINGTON went to the bridge to review documents. MST1 ERICKSON explained to the Chief Engineer that he was going to be checking the Oily Water Separator (OWS). He then asked the Chief Engineer if he knew how to run the OWS and the Chief Engineer replied back by saying no. MST2 ERICKSON checked the alarm system and it seemed to be working. The Chief Engineer was unable to get the Oil Content Meter (OCM) to work so he went and retrieved the instructional manual. While in the engine room, LTJG LEKANDER told MST2 ERICKSON he received a note from the Second Engineer. Later on, the Second Engineer gave MST2 ERICKSON a camera. The Second Engineer told him the camera had pictures of hoses they were using to discharge illegally and the Chief Engineer was telling them to do so. The Third Engineer was there when the camera was given to MST2 ERICKSON. MST2 ERICKSON looked at the pictures when the Second and Third Engineer walked away. According to the pictures, one hose was going into the bilge holding tank, the top was off, the hose was attached to an orange pump and there was another hose attached to the pump which went into the Marine Sanitation Device (MSD). One hose seemed to be clear and the other one was an orange color. MST2 ERICKSON pulled up the deck plate and it resembled the hatch that was in the picture. The pictures also showed the hoses hooked up. The bolts on the MSD looked worn and looked like they were opened quite a bit. MST2 ERICKSON did not do a full operational test on the OWS because of the note and camera.

4. The Second Engineer showed LTJG LEKANDER the hoses and pump in the steering room. MST2 ERICKSON then stood in the steering room with the hoses and pump to watch over it.

5. Eventually, other Coast Guard members came out to the M/V Antonis G. Pappadakis. CWO Tommy THOMPSON, Sector Hampton Roads, Prevention, came down to the engine room and they did the full operational test on the OWS. The OWS took six hours to run because there was something wrong with the pump attached to the OWS. The engineering crew took the pump apart and it seemed to be locked up and wouldn't run. Once it was fixed, the OCM began to work and the data was able to be matched to the Oil Record Book (ORB). The data in the ORB was consistent with OCM which

| Investigator's Name, Title, and Signature | Approving Official's Name, Title, and Signature |
|---|---|
| X Maria Milbourne   17 June 13 Maria Milbourne Special Agent | X O. E. Harris (for)  20 June 2013 Otis E. Harris, Jr Special Agent-In-Charge |

**WARNING**

THIS DOCUMENT IS THE PROPERTY OF THE COAST GUARD INVESTIGATIVE SERVICE. INFORMATION CONTAINED HEREIN IS LAW ENFORCEMENT SENSITIVE IN CHARACTER AND ITS SECURITY FROM UNAUTHORIZED DISCLOSURE MUST BE PRESERVED. THE CONTENTS OF THIS REPORT MAY BE DISCLOSED ONLY TO THOSE PERSONS WHOSE OFFICIAL DUTIES REQUIRE ACCESS. NO COPIES SHALL BE MADE AND CONTENTS MAY NOT BE DISCLOSED TO THE PARTY(S) CONCERNED WITHOUT SPECIFIC AUTHORIZATION FROM DIRECTOR, COAST GUARD INVESTIGATIVE SERVICE

PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 USC 552 AND 552(a)

CLASSIFICATION STAMP
UNCLAS / FOUO / LES

Local Reference No

MVAP_B000077

| CG-4608-1 | MEMORANDUM OF ACTIVITY (continuation sheet) |
|---|---|

**SUBJ:** M/V ANTONIS G. PAPPADAKIS          **CCN:** 0152-13 GCH 1542 2L[GK]

seemed odd because of the age of the ship and the OWS was not being used often.

6. MST2 ERICKSON sat in on the second round of interview with the engineering crew and the lawyers. No one disclosed any information about illegal discharging.

7. On 17 April 2013, MST2 ERICKSON issued another Form A (what type of exam) and Form B (all deficiencies that needed to be completed) to the Master. He also gathered more ORB's and manuals (NFI). He also sat in on interviews with the Second Engineer, two Third Engineers, Engineering Cadet and Electrician. The Second Engineer explained the hoses were set up from the bilge holding tank into the MSD. It took approximately three to five minutes for the MSD to fill up then they manually released it overboard. They all knew it was wrong but they did not want to get blacklisted. He was scared about telling because he has a family and didn't want to lose his job. One of the Third Engineers was unable to sleep the night the Coast Guard came onboard so he talked to the Second Engineer and knew it was the right thing to do to come forward and tell the truth. The other Third Engineer was too scared to talk because of his family. He also said the Coast Guard had all of the information from the Second Engineer and other Third Engineer. The Electrician knew something was wrong with the hoses when he walked through the engine room. Everyone had the same story about how the hoses were hooked up and how the oily water was dumped overboard. There was no official way to do the soundings. The Chief Engineer would make the official entry into the ORB. There was no rough log kept.

8. MST2 ERICKSON provided a typed Word document which contained what he did on 15 April 2013 (Attachment (A)).

9. MST2 ERICKSON did not provide any other pertinent information.

ATTACHMENT:

   (A) MST2 ERICKSON's typed notes; dated 15 April 2013

| PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 USC 552 AND 552(a) | CLASSIFICATION STAMP UNCLAS / FOUO / LES | PAGE 2 OF 2 PAGES |
|---|---|---|

# Exhibit B

| From: | J. Stephen Simms <jssimms@simmsshowers.com> |
| --- | --- |
| Sent: | Wednesday, June 19, 2013 12:05 PM |
| To: | 'richard_colgan@fd.org'; 'george.kelley@usdoj.gov'; 'michael.dilauro@usdoj.gov'; 'joseph.kosky@usdoj.gov' |
| Cc: | 'Patrick Brogan'; 'George M. Chalos'; 'pdavey@daveybroganpc.com'; Briton Sparkman; 'George A. Gaitas'; Debbie M. Hnat; Tom Ward; Marios J. Monopolis; W. Charles Bailey, Jr. |
| Subject: | M/V ANTONIS G. PAPPADAKIS / Angelex et al - Our Client, 2d Engineer Nathaniel Enicola - APPS Whistleblower Award and Wage/ Material Witness Payments |
| Attachments: | 2012_1221_Seamans Church Institute Ltr.pdf |

| Importance: | High |
| --- | --- |

George, Joseph, Michael and Rick,

To follow up our call with Rick awhile ago, and with George Chalos ( George and other defense counsel in copy), we represent Second Engineer Nathaniel Enicola in connection with his APPS whistleblower claims and also any wage and/or material witness fee claims that he has.

This as noted to Rick is in parallel with Rick's criminal side representation of Second Engineer Enicola, in connection with the Grand Jury and related proceedings

In particular, an increasingly common shipowners' defense to APPS whistleblower awards, is to assert that the whistleblower is not entitled to any award because of a failure to follow internal company "hotline" procedures when the whistleblower knows of an APPS violation. We have also seen situations in which, the shipowners' / defendants' security has been released and nothing remains to secure any later-awarded APPS whistleblower payment. Attached is a letter from Doug Stevenson, Esq. of the Seamen's Church Institute, which details some of the challenges which APPS whistleblowers face. Because Federal Public Defenders' (or CJA appointed counsel) appointments as counsel cannot include advising APPS whistleblowers about affirmative recovery, and the appointment effectively ends when the grand jury proceedings do – while – APPS whistleblowers typically are kept for months awaiting a trial or settlement, Second Engineer Enicola has asked us to assist him with representation focusing on the APPS award and also his personal living situation while otherwise held for trial or settlement.

In particular, defendant/owners take the position that Second Engineer Enicola ( and the other crew members held as witnesses ) are no longer entitled to payments from defendant/owners ( or their crewing agency). Second Engineer Enicola and the other crew members being held, however, should at the least be paid witness fees pursuant to 18 USC 1821 (http://www.law.cornell.edu/uscode/text/28/1821) and 18 USC 3144 (http://www.law.cornell.edu/uscode/text/18/3144 ). Apparently defendant/owners contend that Second Engineer Enicola and witnesses, are no longer defendant/owners/crewing agency employees and are not entitled to any further payments from defendant/owners/crewing agency. This puts these witnesses – and their families who depend on remittances - in an untenable situation, including with no money for food or subsistance  (it also is unclear who at this point, is paying the motel expenses; that apparently has been the Government).

The GSA per diem rates for Norfolk / Portsmouth are (http://www.gsa.gov/portal/category/100120 ) $89 for lodging and $61 for meals and expenses. If the Government has been paying the lodging, then, Second Engineer Enicola should be paid the $61 rate for each day, that he has remained as a witness and otherwise unpaid.

I know that you all are very focused on the impending 4th Circuit argument (Greenbriar) and briefing, and this Friday's personal jurisdiction hearing – and probably among some of Starbucks' best customers right now – but in the rush of all of this it is important from a fundamental human standpoint, that Second Engineer Enicola and his fellow crewmate-witnesses are paid.

Michael, we will connect directly with you by phone on this; please reach me before then if more convenient to you.

Best Regards, Steve

**J. Stephen Simms** | **SIMMS SHOWERS LLP**
20 South Charles Street, Suite 702 | Baltimore, MD  21201
T: 410-783-5795 | M: 410-365-6131 | F: 410-510-1789
jssimms@simmsshowers.com | www.simmsshowers.com

# Exhibit C

**FILED**

United States of America,                    )
                                             )        JUN - 5 2007
                    Plaintiff,               )
                                             )    CLERK, U.S. DISTRICT COURT
       v.                                    )    EASTERN DISTRICT OF CALIFORNIA
                                             )    BY _____
ARTEMIOS MANIATIS ET.AL.                     )          DEPUTY CLERK
                                             )
                                             )    No. 07-CR-0024 DLJ
                                             )
                    Defendants.              )    **VERDICT FORM FOR DEFENDANT**
                                             )    **ATHENIAN SEA CARRIERS.**

Count One

On Count One of the Indictment, Conspiracy in violation of 18
U.S.C. § 371, we, the Jury, find the defendant Athenian Sea
Carriers:

    ✓  Not Guilty              _____ Guilty

Count Two

On Count Two of the Indictment, submitting a false writing or
document to the United States Coast Guard in violation of 18
U.S.C. § 1001, we, the Jury, find the defendant Athenian Sea
Carriers:

    ✓  Not Guilty              _____ Guilty

Count Three

On Count Three of the Indictment, making a false statement to
the United States Coast Guard in violation of 18 U.S.C. § 1001,
we, the Jury, find the defendant Athenian Sea Carriers:

    ✓  Not Guilty              _____ Guilty

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

Count Four

On Count Four of the Indictment, making a false statement to the United States Coast Guard in violation of 18 U.S.C. § 1001, we, the Jury, find the defendant Athenian Sea Carriers:

☑ Not Guilty          ___ Guilty

Count Five

On Count Five of the Indictment, violating the Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a), we, the Jury, find the defendant Athenian Sea Carriers:

☑ Not Guilty          ___ Guilty

Count Six

On Count Six of the Indictment, obstructing an investigation of the United States Coast Guard in violation of 18 U.S.C. § 1505, we, the Jury, find the defendant Athenian Sea Carriers:

☑ Not Guilty          ___ Guilty

Count Seven

On Count Seven of the Indictment, destruction of evidence in violation of 18 U.S.C. § 1519, we, the Jury, find the defendant Athenian Sea Carriers:

☑ Not Guilty          ___ Guilty

Dated: 6/5/07          Foreperson: _____

2

# Exhibit D

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE D. LOWELL JENSEN, JUDGE

---oOo---

UNITED STATES OF AMERICA,

              Plaintiff,

vs.                    No. CR. S-07-24

DIMITRIOS GEORGAKOUDIS,

              Defendant.

_____/

---oOo---

<u>REPORTER'S TRANSCRIPT</u>

COURT'S RULING

WEDNESDAY, OCTOBER 24, 2007

---oOo---

Reported by:      KELLY O'HALLORAN, CSR #6660

APPEARANCES


For the Plaintiff:


    RONALD TENPAS
    Actint Assistant Attorney General, Environment and
    Natural Resources Division
    U.S. Department of Justice - Environmental Crimes Section
    601 D Street, N.W.
    Washington, D.C.  20004
    BY:  JOHN IRVING
        KRISHNA S. DIGHE


For the Defendant:


    CHALOS, O'CONNOR & DUFFY
    366 Main Street
    Port Washington, NY  11050
    BY:  MICHAEL G. CHALOS
        BRIAN T. McCARTHY

    ROGERS JOSEPH O'DONNELL
    311 California Street
    San Francisco, CA  94104
    BY:  ROBERT J. BREAKSTONE

1   like this, you come down to credibility issues, and you

2   really have to make up your mind about what kind of

3   credibility goes to what persons.

4          As far as Mr. Mendoza is concerned, I've seen him on

5   his deposition, and I've seen that testimony, and there are

6   flat contradictions in terms of his testimony.  There are

7   flat contradictions of his testimony in terms of what he has

8   said as opposed to what he made in terms of statements to the

9   investigators afterwards.  There were contradictions with the

10  surveyor who came on the ship who I think has been described

11  as independent.  I don't see any reason why we should be

12  looking at him other than he just says what happened.  And he

13  tells what happened, and it contradicts what Mr. Mendoza

14  says.  And some of the other people who are describing the

15  sequence of the events also contradict it.

16         So it really comes down to whether or not you think

17  there's a credibility issue.  And there is with him.  When

18  you go back to the event that we agree upon where there was

19  an altercation and we follow it up, I don't think there's

20  much question at all that he came down from the event, he was

21  crying, as he was on the deposition.  He was crying, and he

22  said I've been kicked and pushed.  And when we checked that

23  out, that isn't true.  So it's a little hard to -- little

24  things like he shows us one event where he signed up

25  something with the ship, and he said I didn't sign that.

1    That's not my signature.  Well, I'm not a handwriting expert.

2    I don't really believe in handwriting experts.  But I think

3    you can look and see whether or not it looks like the same

4    signature.  And if you look at that and his driver's license

5    and other things he signed, that's the same person.  So I

6    don't know why he does something like that.  But the net

7    result is that Mr. Mendoza is not credible.

8         From a fact-finding standpoint, as the fact finder, I

9    have real trouble in giving credibility to Mr. Mendoza.  That

10   doesn't mean that I'd say that everything he says is wrong.

11   Because I think that, as I said before, when people are in

12   situations like this, some of what you say is correct and

13   some of what you say is not correct.  But I think there's a

14   difficulty with Mr. Mendoza when he does this.

15        And I know there was the argument made that the

16   so-called motivation to get a reward is not as significant as

17   it may be, but there is a motivation.  It is there.  And when

18   you look at it, when he's saying I don't know what it is,

19   there is the situation where did you see how one of these was

20   awarded, and there was a description in the papers, and he

21   said no, I didn't see it, and then he tells Delos Trino I

22   did.  So I think it's important in terms of motivation when

23   you're talking about if he does turn in the ship, will he get

24   some kind of a reward.  And he doesn't tell us the truth

25   about all that.  That's troubling to a fact finder.

1          Contrano has the same problem.  Contrano tells us

2     something, just flatly, he says I didn't hear about this

3     until we got to Benicia.  I don't think that's a true

4     statement in terms of the testimony before us.  I think that

5     when he said other things, I think a good many of the things

6     he says are correct, I can follow, but I can't see him doing

7     that.  And it troubles me that, once again, you get back to

8     motivation areas, and he doesn't tell us truthful testimony.

9          Same thing with reference to De Jesus.  He's been

10    around a long time.  He knows what's going on.  He tells us

11    what happens.  He also is contradicted by Delos Trino.  And

12    in his testimony, I couldn't understand why he was so

13    combative where he absolutely said I didn't say this at the

14    prior proceeding, and he said this didn't happen.  That's

15    hard for me to accept.  These are issues that have come up in

16    terms of the way one assesses credibility.

17          So ultimately you get down to these areas of

18    motivation being a very real issue.  Now, I know motivation

19    is not an element.  It's not an element in any crime.  It's

20    not an element in these crimes at all.  But it is a big part

21    of reality in terms of what one assesses about what one hears

22    as what the motivations are.  And as I look at the

23    motivations for saying that there was a magic pipe there,

24    there are motivations.  And it troubles me that the

25    description of how those motivations play out was not told

24

1          I certify that the foregoing is a correct transcript

2     from the record of proceedings in the above-entitled matter.

3

4

5                          _____

6                          KELLY O'HALLORAN, CSR #6660

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit E

1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
2                        HOUSTON DIVISION

3

4  UNITED STATES OF AMERICA      *   Criminal No. H-09-492
                                 *
5  VERSUS                        *   Houston, Texas
                                 *   April 20, 2010
6  IOANNIS MYLONAKIS             *   9:00 a.m.

7

8                    TRANSCRIPT OF JURY TRIAL
           BEFORE THE HONORABLE KENNETH M. HOYT
9               UNITED STATES DISTRICT JUDGE
                         VOLUME 2
10

11  For the Government:

12         Mr. Kenneth E. Nelson
           Mr. David P. Kehoe
13         Environmental Crimes Section
           U.S. Department of Justice
14         601 D. Street, Room 2128
           Washington, D.C. 20004
15

16  For the Defendant:

17         Mr. Joel A. Androphy
           Ms. Kathryn E. Nelson
18         BERG & ANDROPHY LLP
           3704 Travis
19         Houston, Texas 77002

20

21  Court Reporter:

22         Fred Warner
           Official Court Reporter
23         515 Rusk Ave.
           Houston, Texas 77002

24

25  Proceedings recorded by mechanical stenography, produced by
    computer aided transcription.

```
 1   Appearances - Con't:

 2

 3           Mr. George M. Chalos
             CHALOS & Company, PC
 4           123 South Street
             Suite 105
 5           Oyster Bay, New York 11771

 6

 7           Mr. George A. Gaitas
             Chalos and Company
 8           7210 Tickner Street
             Houston, Texas 77055
 9

10   Also Present:

11           Official Court Interpreter

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

CASIPE-CROSS

1  you, or this construction?

2  A    Yes.  Up to me.  That's what I did.  I connected the

3  hose.

4  Q    Now, do you know what a whistleblower reward is?

5  A    I don't know, I don't know if whoever would be the

6  whistleblower, if there is any.

7  Q    Do you know whether or not, just your own personal

8  knowledge, whether a whistleblower gets paid any money from

9  the federal government for reporting a magic pipe?

10  A    From what I heard, they said that there is; but I have

11  not proven it to myself.

12  Q    Okay.  You've heard about whistleblower rewards; is that

13  correct?

14  A    Yes.  Only heard about it.

15  Q    Is it pretty common knowledge on the vessel that

16  whistleblowers get paid money from the federal government if

17  they reporter a magic pipe?

18        MR. NELSON:  Objection, Your Honor.  The foundation

19  of the question is misspoke.

20            May we approach, Your Honor?

21        THE COURT:  Are you objecting?

22        MR. ANDROPHY:  I can rephrase it a different way.

23        THE COURT:  That's what I am asking.  Are you

24  objecting to the form of the question itself?

25        MR. NELSON:  Yes, Your Honor.

CASIPE-CROSS

1      THE COURT:  Because you have the right to ask some

2  questions along this line.

3      MR. NELSON:  I don't disagree, Your Honor; but any

4  connotation that it's the prosecution that pays rewards is

5  not right.  It's up to the Court.

6      THE COURT:  Let's restate the question.

7  BY MR. ANDROPHY:

8  Q   Well, is there discussions amongst the crew on the vessel

9  as to whether or not you could get a reward for turning in

10  someone using a magic pipe?

11  A   No, sir.

12  Q   Just you knew?

13  A   I have heard about it in the Philippines, in our place in

14  the Philippines because there is an Association of Seamen,

15  and there have been discussions about this.

16  Q   Now, is there a phone on the vessel where you can call

17  home?

18  A   Yes, above, on the bridge.

19  Q   Up here (indicating)?

20  A   Yes.

21  Q   And the phone could be used to call your family?

22  A   Yes.  You need to get a card.  You need to call by

23  satellite.

24  Q   Is there a phone -- could you call the company?

25  A   You would need to ask for permission from the Captain if

CERTIFICATION

1

2

3

4

5        I, Fred Warner, Official Court Reporter for the

6   United States District Court for the Southern District of

7   Texas, Houston Division, do hereby certify that the foregoing

8   pages 1 through 194 are a true and correct transcript of the

9   proceedings had in the above-styled and numbered cause before

10  the Honorable KENNETH M. HOYT, United States District Judge,

11  on the 20th day of April, 2010.

12        WITNESS MY OFFICIAL HAND at my office in Houston,

13  Harris County, Texas on this the 15th day of July, A.D.,

14  2011.

15

16

17

18

19                          _____

20                              Fred Warner, CSR
                            Official Court Reporter

21

22

23

24

25

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION

 3

 4   UNITED STATES OF AMERICA      *    Criminal No. H-09-492
                                   *
 5   VERSUS                        *    Houston, Texas
                                   *    April 21, 2010
 6   IOANNIS MYLONAKIS             *    9:00 a.m.

 7

 8                    TRANSCRIPT OF JURY TRIAL
                BEFORE THE HONORABLE KENNETH M. HOYT
 9                 UNITED STATES DISTRICT JUDGE
                             VOLUME 3
10

11   For the Government:

12           Mr. Kenneth E. Nelson
             Mr. David P. Kehoe
13           Environmental Crimes Section
             U.S. Department of Justice
14           601 D. Street, Room 2128
             Washington, D.C. 20004
15

16   For the Defendant:

17           Mr. Joel A. Androphy
             Ms. Kathryn E. Nelson
18           BERG & ANDROPHY LLP
             3704 Travis
19           Houston, Texas 77002

20

21   Court Reporter:

22           Fred Warner
             Official Court Reporter
23           515 Rusk Ave.
             Houston, Texas 77002
24

25   Proceedings recorded by mechanical stenography, produced by
     computer aided transcription.
```

1  Appearances - Con't:

2

3          Mr. George M. Chalos
           CHALOS & Company, PC
4          123 South Street
           Suite 105
5          Oyster Bay, New York 11771

6

7          Mr. George A. Gaitas
           Chalos and Company
8          7210 Tickner Street
           Houston, Texas 77055

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  Q    This is page 75 again.  Excuse me.

2                "Did the government tell you that you were not

3  being truthful in your answers?"

4                And you testified that your statement was

5  lacking.

6                Does that mean you were being truthful or

7  untruthful?

8  A    I told the truth, sir.

9  Q    So you told the truth when you told them that it was all

10  of Mr. Mylonakis and you had nothing to do with it?

11  A    Can you repeat it, sir?

12  Q    You were telling the truth when you told the government

13  that he was the one responsible, Mr. Mylonakis, and you, Mr.

14  Pagalan, had nothing to do with it?

15  A    Yes, sir.

16  Q    Now, do you know what a whistleblower award is?

17  A    No, sir.

18  Q    Have you ever heard in the Philippines from living there

19  that crewmen or engineers on vessels could get rewards if

20  they reported illegal activity to the government?

21  A    I did not know, sir.

22  Q    You know nothing about it?  You know nothing about it?

23  A    I have heard about it once, sir.

24  Q    Okay.  You've heard about it.

25                Are you the whistleblower in this case?

PAGALAN-CROSS

1  A    Can you repeat it, sir?

2  Q    Are you the person that reported the magic pipes to the

3  Coast Guard?

4  A    Yes, sir.

5  Q    And from what you know, do you have a chance to make some

6  money for your report and for your testimony?

7  A    I do not know, sir.

8  Q    So you may.  There may be an opportunity for you to put

9  some money in your pocket based on how good your testimony

10  is?

11          MR. NELSON:  Objection, Your Honor.  He has already

12  answered this question.

13          THE COURT:  I am going to overrule that objection,

14  but I think it's the form of the question that I have some

15  concern about.

16          MR. ANDROPHY:  I will rephrase it.

17  BY MR. ANDROPHY:

18  Q    Do you have an opportunity to get some money in this case

19  if the government decides you've been a good witness?

20  A    Can you repeat, sir?

21  Q    Do you have the opportunity to make some money from the

22  government if you are a cooperating witness?

23          MR. NELSON:  Objection, Your Honor.  The form of the

24  question suggests the government is giving awards.

25          MR. ANDROPHY:  It does suggest the award.

PAGALAN-CROSS

1       THE COURT:  It does.  And the government does pay

2   bonuses and things.  So let's don't play around with that.

3           I am talking about how the question is phrased.

4   And the jury should understand that this is not unusual.  The

5   government does these kinds of things; and so, let's not make

6   that the issue.

7           The question is whether or not he knows it and

8   whether or not he has been made some promises or

9   representations.

10          Now let's proceed.

11  BY MR. ANDROPHY:

12  Q   Do you have any understanding that the government may pay

13  you money in this case based upon your testimony and

14  cooperation?

15  A   I do not know, sir.

16          THE COURT:  And let me just make sure the jury

17  understands my remarks and instructions.  Not just the

18  federal government, the state government and a number of

19  governments engage in paying bonuses to persons who report

20  illegal activities.  There is nothing improper about that,

21  nothing illegal or improper.  And this questioning, this line

22  of questioning is appropriate.

23          So let's proceed.

24  BY MR. ANDROPHY:

25  Q   Now, since February of 2009, since the time the Coast

CERTIFICATION

1

2

3

4

5        I, Fred Warner, Official Court Reporter for the

6   United States District Court for the Southern District of

7   Texas, Houston Division, do hereby certify that the foregoing

8   pages 1 through 208 are a true and correct transcript of the

9   proceedings had in the above-styled and numbered cause before

10  the Honorable KENNETH M. HOYT, United States District Judge,

11  on the 21st day of April, 2010.

12        WITNESS MY OFFICIAL HAND at my office in Houston,

13  Harris County, Texas on this the 1st day of December, A.D.,

14  2011.

15

16

17

18

19                                    _____
                                          Fred Warner, CSR
20                                      Official Court Reporter

21

22

23

24

25